Oh, and I should say that I welcome, forgot to welcome at the start, the students I see are now leaving from the New Explorations into Science, Technology, and Math 12th graders. Thanks for visiting with us today. May it please the Court. Stephen Manning, representing Raekwon Houpe. The district court in this case abused its discretion in denying Mr. Houpe's pro se motion to withdraw his guilty plea. Mr. Houpe's motion raised issues and circumstances pertaining to voluntariness. And when that happens, this court has held that there must be an inquiry into the voluntariness issue. This particular case, that inquiry did not occur. Well, let me ask you about that. I mean, we've also said that the defendant has to raise a significant question about voluntariness to succeed. And the sworn plea testimony carries a very strong presumption of accuracy. So while your client in his motion said he was under duress, during the plea proceeding, he was asked and said under oath that he wasn't. Yes, Your Honor. I understand Your Honor's point, but in this particular case, in the pro se motion, there were several circumstances related to the MDC, which were not part of any evaluation with respect to the voluntariness of the plea. And this court also below had knowledge of the defendant and his particular beliefs and traits that often a district court will not have. In this case, there had been a competency examination in court that demonstrated a diagnosis of a mental health condition. It indicated high levels on test scales that represented possible thought dysfunction. And there was the impact of the MDC circumstances on a person like this with these specific characteristics of which the court was aware, was not evaluated by the district court. And in addition, the allegations in the pro se motion to withdraw mentioned that the standby counsel did not inform the defendant of all the consequences of the plea. Now, the district court, in its opinion, discussed the law with respect to standby counsel and ineffective assistance of standby counsel and a very limited scenario where it's possible to raise such allegations. In this particular case, and those cases spoke of or used language of throughout the proceedings. Those proceedings were trials. In this case, there was a written plea agreement and there was a Rule 11 proceeding. And I would argue that the import of the court's previous law in this area goes to whether the person was acting as counsel with respect to the proceeding that resulted in the finding of guilt. And in this case, that would be the plea agreement followed in connection with the Rule 11. You're relying on our case Schmidt principally. Yes, I'm saying that Schmidt, the import of Schmidt applies here because Schmidt was a trial, here was a plea. And the rationale applies to the plea because the transcript reflects the number of things with respect to the Rule 11 and the plea agreement. The plea agreement does not set forth the elements of the offense. The Rule 11 did not set forth the elements of the offense. The plea agreement did not discuss how the guideline calculation was arrived at. No discussion of what the relevant conduct might be, what the amounts and substances were, and there was no discussion like that in the Rule 11 proceeding itself. There was no government proffer of evidence so that Mr. Hoop did not hear what the evidence was that the court would have heard and the jury would have heard at a trial. I mean, how much are we to take away from Schmidt? I mean, in that case, the court said, well, and this was, I think, dicta, there may be a case where standby counsel is really standby counsel in name only. And in that context, we would recognize an ineffective assistance claim. But assuming that is more than dicta, even in that case, it was a trial, not a guilty plea, but the defense counsel conducted, gave a defense summation and cross-examined. And that wasn't enough to say that the defense counsel wasn't acting, I mean, was acting in name only as standby. And here, the record's pretty clear that your client wanted to represent himself. Your Honor, he did, but with respect to the things that mattered, at least from our point of view, the things that mattered were the plea agreement and the Rule 11. And the Rule 11 would have read very differently had standby counsel not been involved in the plea agreement and in advising the defendant about his plea. The, if you look at the sentencing, the standby counsel comes into the sentencing and says, Your Honor, I haven't been involved in this. I haven't been involved. That's absolutely not what was said in the Rule 11, where he said he discussed the matter with his client and that they, that he expressed opinions about the capacity of his client to understand what was going on that day and understand what was in the plea agreement. So the, the transcript itself of the Rule 11, the answers given by counsel shows he was acting as counsel and what he said about the plea agreement and the consequences would be relevant to the voluntariness issue. And that's the issue that the Court, there are other issues, but the Court did not focus on that as required under the case in Doe. We'll hear from the government. May it please the Court. I'm Assistant United States Attorney Michael Maffei and I represented the appellee in the court below. Here the district court did not abuse its discretion when it denied the appellant's motion seeking to withdraw his guilty plea. The court applied the appropriate legal standards and made no clearly erroneous findings of fact. When evaluating the motion to withdraw, the court applied the procedure and the standards set forth in Rule 11, whether or not there was a fair and just reason warranting the withdrawal of the plea. As Mr. Hoop alleged, the basis he was contesting that there was a fair and just reason for the withdrawal was twofold. The ineffective assistance of, alleged ineffective assistance of standby counsel and the alleged involuntariness of his plea. First, as far as the involuntariness piece, I think it was addressed somewhat already. But the sworn statements that Hoop made under oath during the plea hearing directly contradict his claimed basis of involuntariness, which were entirely subjective feelings. So the only person with control or the only evidence of those bases for involuntariness comes from Hoop's statements post-plea and, again, directly contradicted during the plea hearing, not really once but twice. Because he was also asked if he was voluntarily agreeing to have his plea heard by a magistrate judge. So on two occasions, he was asked if he was being pressured in any way and denied that completely. Also — What can we make of the fact that there was a competency evaluation? I know the bottom line of that evaluation was ultimately that he is able to understand the nature of the proceedings. But there were some statements by the evaluator that suggested he had personality, mental health issues that could impair his understanding. Your Honor, while they did make a finding, I believe the finding was that he had an antisocial personality. There was nothing in there that really spoke to his mental abilities to comprehend and understand. In fact, I think the evaluator went out of their way on multiple occasions to highlight the word unwillingness, that this was not a lack of understanding. This was not coming from a place of a lack of intelligence to know what was going on. Just the opposite. Mr. Hoop understood what was going on. He understood the charges against him. He was unwilling to participate. He did not want to engage with the court and counsel. And they also went so far as to say that his attempt to put forth sort of a sovereign ideology in the district court was actually — appeared to be a defense strategy. So I think that evaluation, when read in totality, makes it very clear Mr. Hoop is a fully competent individual. He just didn't want to go along and make things easy for anyone in this process because he'd been caught. That, I think, is sort of the bottom line as far as his competency. And just as far as the court's — the district court's information on that, it goes beyond the evaluation. The district court judge, Judge Brown, had at least, I believe it was five, if not six, status conferences where it engaged with Hoop at length, both before and after the competency evaluation. So it had ample opportunity to see Mr. Hoop's behaviors, his ability to understand. I would submit the motion to withdraw itself also highlights that he's competent. It's a well-written, well-reasoned motion for a pro se defendant. So I don't think the competency issue really — I don't think that plays any role or shouldn't play any role here in this court's consideration. Also, just merely for the fact that Hoop himself didn't raise a lack of understanding in the competency sense when he made the motion to withdraw, that's at issue here. Turning to the ineffective assistance of standby counsel argument, the appellant's argument regarding Mr. LaPinta's status throughout the proceedings is sort of putting form over substance. It was very clear from Mr. Hoop that he didn't want Mr. LaPinta involved, and I believe at every status conference when Mr. LaPinta spoke, it was either about scheduling matters or about his availability to attend. Again, Judge Brown directed that Mr. LaPinta act as standby counsel, even though Mr. Hoop indicated he did not want standby counsel. And I think the fact that the magistrate judge during the plea allocution did engage with Mr. LaPinta on certain questions, well, as an officer of the court, he's certainly required to answer the court truthfully. But to what extent he engaged with Mr. Hoop regarding the plea that they may very well may have discussed together, I think that sort of then shifts a little bit beyond — and I'll come back to why the ineffective assistance claim against standby counsel was properly rejected. But even if you were to analyze this and the substance of Mr. Hoop's claims about Mr. LaPinta, it is not that he provided incorrect advice in any way. It's that he didn't advise of certain things, and I think that highlights that he was acting in that standby capacity. So when you look at the actual substance of the representation, based on Mr. Hoop's own claims, Mr. LaPinta was doing nothing more than answering whatever questions were asked of him. And if a question wasn't asked, well, I think it's sort of well settled by the Supreme Court precedent and this Court's precedent that those are the risks associated with electing to go pro se and the risks that Mr. Hoop was advised of clearly and elected repeatedly that he wanted to take upon himself. So looking at the district court's decision, it did analyze that factor. It did analyze — not — it went beyond if — it didn't just say, okay, we're foreclosing this claim because you have standby counsel, that's not ineffective assistance. It looked at the substance of the ineffective assistance claims and concluded that they were invalid as well before finding that there was no fair and just reason warranting withdrawal. So even after then, when it found no fair and just reason, it considered the other three factors that precedent had said this district court may consider, specifically whether or not there was prejudice to the government, which here it didn't need to consider because it had already found there was no fair and just reason. But it did anyway in finding that having a second set of trial preparation thrust upon it could be prejudicial or would be prejudicial to the government. It also — the district court also found that it was uncontested, but while there was some confusion or I would say a lack of clarity as to when the defendant's motion to withdraw was actually filed, everyone credited the defendant's version of when it was filed, even though it was not stamped in by the district court until months later, to give him the benefit of the doubt on that front. The district court did give him the benefit of the doubt on that factor. And then it considered probably what's one of the more important factors, and I think this Court's precedent in Lopez, or at least this Court's decision in Lopez, has said that there's a risk of greater injustice of denying such a motion to withdraw when the person making the motion is claiming innocence. Mr. Hoop has never, throughout the pendency of this claim, to be innocent of the charges against him. It's that he wanted to contest his drug weights at sentencing and things like that, not that I didn't deal drugs. So for all those reasons, Your Honors, the district court appropriately rejected the motion. We ask that you affirm the judgment, and I'll yield the remainder of my time and rely on her. Assuming that a standby counsel cannot render constitutionally ineffective advice, surely that doesn't mean that bad advice from anybody, a standby counsel or anybody, can't contribute to a claim that a plea was not voluntary and knowing. Correct? It could contribute to it. But, again, Mr. Hoop's claims of the in- I understand these facts. It's just we're sort of looking at the broad general principle that a standby counsel cannot render service that is constitutionally ineffective because you don't have a constitutional right to have a standby counsel. But that doesn't mean that a standby counsel cannot prejudice and impair the right to have a knowing and voluntary plea. I would agree with that, Your Honor. I'm sure there are a set of facts upon which a standby counsel could have injected themselves or even if asked a question by the defendant, have been so incorrect or so far afield from what the correct factor law is that they then render a plea involuntary. But here on these facts, Mr. Hoop's allegations about Mr. Lapinta exonerate that situation. It's not that he told me something wrong and I didn't understand it. It's he didn't tell me this, he didn't tell me that. Not that I asked and he didn't answer. It's just that he never injected himself into the case to give me advice, and that's not required of standby counsel. That would be essentially intruding on his right to represent himself. I understand. Thank you. If there's no other questions. Thank you, judges. Your Honor, with respect to what Mr. Lapinta may have told the defendant, we don't know. And the reason we don't know is the judge did not look at voluntariness through having a hearing to find out. The transcript of the Rule 11 is very clear that Attorney Lapinta is answering questions saying he had discussed this plea agreement and the resolution with the client. It's set forth in the colloquies, various colloquies, or in Mr. Hoop's brief. If the answer was I didn't provide any information except when asked a question, Mr. Lapinta would have said that, and he didn't. So in terms of he, Mr. Hoop, wrote this motion September 16th, a month after the plea. That's relatively quick. There's no pre-sentence report until 14 months later that would have informed him that the guidelines are higher than even the plea agreement imagined, never mind based on what type of relevant conduct, which is not in the plea agreement. Didn't the plea agreement contemplate life? Oh, no. The plea agreement was 151 to 188, I believe. But the PSR, which came out again 14 months later, Mr. Hoop could not have had any knowledge of it, was one something to 235. I mean, it was substantially higher. But he had no knowledge of that. It didn't happen yet. And so the fact that it was a month later is important. Now, there is confusion about, well, how, why was the motion manually stamped, filed on January 4th, 2023? And there's another letter that's received and also stamped with the same day, January 4th. Now, there was something going on, I have to say, in the court because those documents stamped on January 4th did not get entered in the docket until April 2nd, a couple months later. And only at that point did the district judge become aware that the motion had been filed, and that's when the district judge ordered the government to respond. So, and you look at the two envelopes of the two letters, one of them has a postal stamp that says holidays. That's the December writing. Didn't the government say, well, The government did. Absolutely. The government did that. The court said, well, I'll assume it, but there's nothing further than assuming it. There's no weighing that in favor of Mr. Hoop. The ruling just doesn't do that. And also, you know, the other issue touched upon is prejudice to the government, but there wasn't any. There were all of the discovery had occurred. There were three additional pages of discovery mandated by a superseding indictment. They were essentially one subsumed the other and added one witness. The trial would be two weeks at most. Most of the evidence would be videos of controlled purchases. So it's not, there are no motions of limine, no voir dire, nothing, no expert disclosures, the things that would be prime trial prep. None of that is in the record. So in conclusion, I had asked the court to reverse and vacate and remand. And with respect to a remand, I would argue that because the district judge accepted the guilt of the defendant, that if this court decides to remand, that it remand to another judge based on the analysis of this court in United States v. Johnson, 850 Fed Third 513. Thank you. Thank you, Mr. Manning. We'll take the matter under advisement. Thank you both. We'll argue.